# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| FRED JAHNKE and RODGER KRETMAN, *as Trustees of the IBEW Local No. 292 Health Care Plan; the Electrical Workers Local No. 292 Pension Fund; the Electrical Workers Local No. 292 Annuity & 401(k) Fund; the Electrical Workers Local No. 292 Vacation & Holiday Fund; and as Trustees of the Minneapolis Electrical Industry Board/JATC/LMCC, and each of their successors,* | Civil No. 13-962 (JRT/SER) |
| Plaintiffs, | |
| and | **MEMORANDUM OPINION AND ORDER** |
| ECS PROJECT MANAGEMENT, INC., *d/b/a ECS Electric,* | |
| Third-Party Plaintiff, | |
| v. | |
| R.J. RYAN CONSTRUCTION, INC., | |
| Third-Party Defendant. | |

Benjamin Robert Garbe and Amanda R. Cefalu, **ANDERSON, HELGEN, DAVIS & NISSEN, LLC**, 333 South Seventh Street, Suite 310, Minneapolis, MN 55402, for plaintiffs.

Phillip James Addis, **LAW OFFICES OF PHILLIP JAMES ADDIS LLC**, 504 Main Street, Suite 200, La Crosse, WI 54602; Stephen A. DiTullio and Theresa M. Movroydis, **DEWITT ROSS & STEVENS SC**, Two East Mifflin Street, Suite 600, Madison, WI 53703; and Gregory P. Pittman, **GALEN W. PITTMAN, S.C.**, 300 North Second Street, Suite 210, La Crosse, WI 54602, for third-party plaintiff.

Aaron A. Dean, **BEST & FLANAGAN LLP**, 225 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for third-party defendant.

This action was originally brought by Plaintiffs Fred Jahnke and Rodger Kretman

in their capacities as trustees of various fringe and retirement benefit funds held by an

electrical workers union on behalf of its members.  Plaintiffs alleged that Defendant ECS Project Management, Inc. ("ECS"), which employed members of the union on its job sites, failed to remit payments to these funds as required by a collective bargaining agreement.  ECS then brought a third-party complaint against R.J. Ryan Construction, Inc. ("RJ Ryan"), alleging that on a project where RJ Ryan was the general contractor, ECS submitted draw requests for the payment of fringe benefits for workers on the project, including members of the union, and that RJ Ryan refused to remit those funds to ECS.

Prior to the filing of ECS' third-party complaint, ECS and RJ Ryan were sued in state court by another entity that subcontracted with ECS on the project where RJ Ryan was the general contractor.  In the state court litigation ECS and RJ Ryan asserted cross-claims against each other bringing claims related to, among other issues, each party's alleged failure to pay amounts due and owing related to the project.

RJ Ryan brings a motion for judgment on the pleadings, arguing that ECS' third-party complaint must be dismissed for lack of subject matter jurisdiction.  In the alternative, RJ Ryan argues that even if the Court has jurisdiction, it should decline to exercise such jurisdiction in favor of the state action under a number of abstention doctrines.  RJ Ryan also seeks to recover attorneys' fees incurred in defending against this federal litigation.  After RJ Ryan filed its motion, ECS and the Plaintiffs settled the claims in the original complaint.  ECS then filed a motion for voluntary dismissal of its third-party complaint.  RJ Ryan opposes the voluntary dismissal, arguing that the third-

party complaint should not be voluntarily dismissed unless the Court awards RJ Ryan its attorneys' fees and costs incurred in defending against ECS' claims.

The Court concludes that it may exercise supplemental jurisdiction over the third-party complaint, so it will deny RJ Ryan's motion for judgment on the pleadings to the extent it seeks dismissal on that basis.  But the Court will grant ECS' motion for voluntary dismissal, because it concludes that voluntary dismissal was sought for a proper purpose, preserves judicial resources at this stage in the proceedings, and will not prejudice RJ Ryan.  Finally, the Court will deny RJ Ryan's request for attorneys' fees, as it finds that the facts do not demonstrate conduct on the part of ECS that warrants such a sanction.

## BACKGROUND

### I.    FEDERAL LAWSUIT

#### A.    The Complaint

On April 25, 2013, Plaintiffs commenced this action against ECS in their capacity as trustees of various fringe and retirement benefit funds ("the Funds") of the IBEW Local No. 292 and Electrical Workers Local No. 292 union.  (*See* Compl. ¶¶ 1-6, Apr. 25, 2013, Docket No. 1.)  The complaint brought claims under various provisions of the Employee Retirement Income Security Act ("ERISA") based on ECS's failure to remit contributions to the Funds in violation of a collective bargaining agreement.  (*Id.* ¶¶ 10-26.)  Specifically, the complaint alleged that ECS, a company that performs electronic contracting work and employs individuals covered by the collective bargaining agreement, breached that agreement "by failing to timely submit the fringe contributions

due and owing for the months of February and March 2013." (*Id.* ¶¶ 7, 14.)   The complaint alleged that for those two months "Defendant has submitted the payroll reports and fringe benefit contribution reports for this period [and] [t]he reports reflect that Defendant owes Plaintiffs $72,478.21 for fringe benefit contributions owed for February 2013 and $8,479.69 in fringe benefit contributions for March 2013." (*Id.* ¶ 14; *see also id.* ¶ 16.)

## B.     Third-Party Complaint

ECS answered Plaintiffs' complaint, admitting that it submitted the referenced payroll and fringe benefit contribution reports and "to not paying the full contributions set forth in said report," but maintaining that it was "uncertain as to the amounts still due and owing." (Answer & Third-Party Compl. ("Third-Party Compl.") ¶ 14, Sept. 17, 2013, Docket No. 22; *see also id.* ¶ 16.)

ECS also brought a third-party complaint against RJ Ryan.[1]  In that complaint ECS alleges that it had entered into a contract with RJ Ryan pursuant to which ECS was to provide materials to a construction project in Scott County, Minnesota, referred to as the "SanMar" project.  (*Id.* ¶ 35.)  ECS alleges that at the time RJ Ryan entered into this contract it "was aware that ECS would be using electricians through IBEW 292 for labor on the project." (*Id.* ¶ 36.)  ECS alleges that, pursuant to the contract, it submitted to RJ Ryan "Draw Requests" for the payment of wages, taxes, and fringe benefits for all

---

[1] ECS also brought a third-party complaint against IBEW Local Number 292.  (Third-Party Compl. ¶¶ 45-52.)  ECS and IBEW Local Number 292 later stipulated to the dismissal of these claims.  (Stipulation for Dismissal, Nov. 22, 2013, Docket No. 49; Order, Nov. 25, 2013, Docket No. 50.)

workers on the SanMar project, including members of IBEW 292.  (*Id.* ¶¶ 37-38.)  ECS alleges that "[n]o funds have been paid to ECS or members of IBEW 292, by RJ Ryan, for any wages, taxes or fringe benefits, since January of 2013 for amounts from 2012." (*Id.* ¶ 40.)  Although RJ Ryan has received the Draw Requests, ECS alleges that RJ Ryan has not submitted funds to either the Plaintiffs in this federal lawsuit or to ECS.  (*Id.* ¶¶ 41-43.)  ECS alleges that it "has suffered damages for the failure to release those funds in that it is being sued by the [Plaintiffs] for these funds and further in that it has paid all net wages due to members of the IBEW 292, without reimbursement by RJ Ryan, in an amount to be determined by this Court."  (*Id.* ¶ 44.)

RJ Ryan answered the third-party complaint denying the allegations that it had failed to properly release funds to ECS.  (Answer ¶ 6, Oct. 18, 2013, Docket No. 33.) RJ Ryan also asserted as affirmative defenses, among others, that the third-party complaint "alleges damages caused by third parties over whom Third-Party Defendant RJRyan has no control," and that "[t]here is no common liability between RJRyan and ECS for Plaintiffs' alleged damages, so ECS's Third-Party Complaint for contribution and indemnity is barred."  (*Id.* ¶¶ 10, 12.)  RJ Ryan also brought a counterclaim against ECS alleging generally that it "has been defrauded by ECS and its principal, Tom Helgeson, as they diverted more than $500,000 of project funds paid by RJRyan to ECS for work performed on the SanMar project" and that "RJRyan has no liability for paying ECS' fringe benefits and any other amounts owed by ECS to Plaintiff, yet ECS' conduct has thrust RJRyan into litigation with third parties, so ECS is liable for RJRyan's damages, including legal fees and costs."  (*Id.* at 3-4.)

## II.   STATE COURT ACTION

In June 2013, Viking Electric Supply, Inc. ("Viking"), a company that furnished ECS with electrical supplies on the SanMar project, filed a mechanics' lien action in Minnesota state district court in Scott County naming ECS and RJ Ryan, among others, as defendants.  (First Aff. of Phillip J. Addis, Ex. A ¶ 9,[2] Dec. 6, 2013, Docket No. 59.) ECS and RJ Ryan were served with Viking's amended complaint on August 6, 2013. (*Id.*, Ex. A at 1.)  In its amended complaint Viking alleged a number of claims including breach of contract by ECS in failing to pay Viking for electrical supplies (*id.*, Ex. A ¶¶ 8-14) and theft by RJ Ryan in failing to pay Viking out of funds held in trust (*id.*, Ex. A ¶¶ 48-54).  Viking also sought to foreclose its mechanics' lien on the SanMar project (*id.*, Ex. A ¶¶ 19-25) and brought a claim to recover a payment bond posted by RJ Ryan as general contractor on the SanMar project (*id.*, Ex. A ¶¶ 26-41).

### A.   RJ Ryan's Answer, Cross-Claim and Counterclaim

On August 26, 2013, RJ Ryan filed an answer and counterclaim against Viking, and also brought a cross-claim against ECS.  (First Aff. of Aaron A. Dean, Ex. 1, Nov. 18, 2013, Docket No. 48.)  In the cross-claim, RJ Ryan brought claims for breach of contract, breach of warranties, negligence, violation of Minnesota's prompt payment statute, violation of Minnesota's statute governing trust funds, and defense and indemnity.  (*Id.*, Ex. 1 at 12-16.)  The cross-claims arose out of the allegation that ECS

---

[2] Exhibit A to the First Addis Affidavit contains the amended complaint filed by Viking in the state court action.  The amended complaint, and the paragraphs cited therein, begin at page 5 of the exhibit.

failed to pay its lower-tier subcontractors and suppliers on the SanMar project, which resulted in Viking's filing of a mechanics' lien against the SanMar project and RJ Ryan's payment bond.  (*See id.*, Ex. 1 ¶¶ 6-13, 21.)

### B.      ECS' Answer and Cross-Claim

On September 13, 2013, ECS filed an answer in the state court action to Viking's amended complaint and RJ Ryan's cross-claim.  (First Dean Aff., Ex. 2 at 35-44.)  ECS also brought its own cross-claim against RJ Ryan alleging breach of contract, negligence, tortious interference with a contract, violation of Minnesota's prompt payment statute, and conversion.  (*Id.*, Ex. 2 at 45-49.)  In the cross-claim ECS alleged that "RJ Ryan has failed to release when due direct or indirect payments to IBEW for wages and benefits, etc." and "[d]ue to the actions of RJ Ryan, ECS Electric has been subjected to claims and lawsuits for amounts due on the project."  (*Id.*, Ex. 2 ¶¶ 66-67; *see also id.*, Ex. 2 ¶¶ 88-91.)

## III.    PROCEDURAL HISTORY OF FEDERAL LAWSUIT

On November 1, 2013, the Court conducted a Rule 16(f) pretrial scheduling conference.  (Minute Entry, Nov. 1, 2013, Docket No. 38.)  During the conference

> Defendant RJRyan raised objections to the Court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367(c) over ECS' Third-Party Complaint, given the fact[] that there is a separate state court proceeding that was filed first and RJRyan alleges that it has already paid more than the value of the RJRyan/ECS subcontract in the underlying construction dispute, so RJRyan asserts it has no conceivable liability under ECS' Third-Party Complaint.

(Order at 2, Nov. 6, 2013, Docket No. 41.)  The Court then instructed ECS "to notify the parties to this lawsuit by November 8, 2013, at the close of business whether ECS was proceeding with its Third-Party Complaint or dismissing the Third-Party Complaint." (*Id.*)  In the event that ECS elected to proceed with its third-party complaint, the Court explained that RJ Ryan was free to bring dispositive motions "and any motions for alternative relief, including seeking legal fees or costs, on or before Friday, November 15, 2013." (*Id.* at 2-3.)

On November 8, 2013, ECS indicated that it would proceed with its third-party complaint, and RJ Ryan filed a motion for judgment on the pleadings.  (Mot. for J. on the Pleadings, Nov. 15, 2013, Docket No. 44.)  In the motion RJ Ryan seeks dismissal of ECS' third-party complaint with prejudice, arguing that the Court lacks subject matter jurisdiction over the complaint.  (Mem. in Supp. of Mot. for J. on the Pleadings at 2, 20 Nov. 18, 2013, Docket No. 47.)  In the alternative RJ Ryan argues that even if the Court has jurisdiction it should decline to exercise jurisdiction in light of the parallel state court proceeding, or dismiss the third-party complaint for failure to state a claim.  (*Id.*)  RJ Ryan also seeks attorneys' fees and costs arguing that it has "unnecessarily incurred" such expenses "as a result of the parallel proceedings and need to prepare the instant motion as a result of ECS' insistence in proceeding in this court." (*Id.* at 19.)

On November 22, 2013, Plaintiffs in the original federal complaint stipulated to the dismissal of its claims against ECS, (Stipulation of Dismissal, Nov. 22, 2013, Docket No. 49), and the Court dismissed those claims with prejudice (Order, Nov. 25, 2013, Docket No. 50).  After this stipulation was filed, counsel for ECS "informed counsel for

R.J. Ryan, Attorney Aaron Dean, that ECS would agree to dismiss the third-party complaint that it filed against R.J. Ryan in federal court, but R.J. Ryan's counsel refused to agree to dismissal unless ECS agreed to pay for R.J. Ryan's attorneys' fees and costs in the federal case." (First Addis Aff. ¶ 4.)

Because ECS refused to pay RJ Ryan's attorneys' fees, it filed an opposition to RJ Ryan's motion for judgment on the pleadings "primarily to dispute that RJ Ryan is entitled to attorneys' fees and costs because . . . ECS's decision to file the third-party complaint and to proceed with the complaint (prior to settlement) was both reasonable and necessary." (Mem. in Opp'n to Mot. for J. on the Pleadings at 3, Dec. 6, 2013, Docket No. 55.)   ECS also filed its own motion to dismiss its third-party complaint against RJ Ryan with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). (Mot. to Dismiss at 1, Dec. 6, 2013, Docket No. 57.)   RJ Ryan responded to the motion indicating that it "will gladly accept dismissal of this duplicative proceeding **with prejudice**," and continues to maintain "that this Court never had the power to hear ECS' third-party claims." (Mem. in Opp'n to Mot. to Dismiss at 2, Dec. 13, 2013, Docket No. 62 (emphasis in original).)   In its response, RJ Ryan also continues to seek attorneys' fees, arguing "[i]t is only proper that RJRyan be compensated for its attorneys' fees and costs that ECS forced RJRyan to incur in its attempt to achieve the same result as ECS' motion to dismiss." (*Id.* at 3.)   Therefore, RJ Ryan requests that the Court deny ECS' motion for voluntary dismissal "unless RJRyan obtains a fee award or the Court directs the fee award issue to be resolved in Minnesota State Court." (*Id.* at 4.)

# ANALYSIS

## I.    MOTIONS TO DISMISS

The dueling motions to dismiss in this case place the Court in the somewhat unusual position of being asked to decide whether dismissal is appropriate under a number of different doctrines where both parties agree, in fact, that dismissal is appropriate.   Most courts to have faced this situation – where a defendant moves to dismiss for lack of subject matter jurisdiction and a plaintiff moves for voluntary dismissal under Rule 41 – have concluded that "when there is reason for a court to believe that it does not have subject matter jurisdiction, as is the case when there is an outstanding motion to dismiss on those grounds, the district court must address this motion before it may rule on a subsequent motion for voluntary dismissal pursuant to [Rule 41]."  *Shortt v. Richlands Mall Assocs., Inc.*, 922 F.2d 836, at *4 (4th Cir. 1990) (unpublished opinion); *see also Harden v. Field Mem'l Cmty. Hosp.*, 265 F. App'x 405, 407 (5th Cir. 2008) ("[T]he court cannot consider the plaintiff's Rule 41(a)(2) arguments unless it has subject matter jurisdiction."); *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 479 F.3d 1330, 1341-42 (Fed. Cir. 2007) (applying Fourth Circuit law and determining that it was error for the district court to grant a motion for voluntary dismissal before first addressing a standing issue); *In re AE Liquidation, Inc.*, 435 B.R. 894, 901 (Bankr. D. Del. 2010) ("[A] court should not consider a Rule 41(a)(2) motion when subject matter jurisdiction is in question, because subject matter jurisdiction has its roots in the constitutional concerns of federalism, while

Rule 41 is premised on judicial economy and equity.").[3]   Accordingly, the Court will begin by considering whether it has subject matter jurisdiction over ECS' third-party complaint against RJ Ryan.

---

[3] In *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760 (8th Cir. 2001), the Eighth Circuit considered the propriety of a district court ruling on a Rule 41 motion for voluntary dismissal prior to establishing subject matter jurisdiction, but did so in the context of a class action. *Id.* at 764-65. The court began by noting that although "a federal district court may not dismiss a case on the merits by hypothesizing subject-matter jurisdiction. . . . [C]ertain threshold issues, such as personal jurisdiction, may be taken up without a finding of subject-matter jurisdiction, provided that the threshold issue is simple when compared with the issue of subject-matter jurisdiction." *Id.* at 764. The court noted that other such threshold issues included "discretionary refusal to exercise pendent jurisdiction and the decision to abstain under *Younger v. Harris*, 401 U.S. 37 (1971)," and that "[i]n this same vein, the First Circuit has specifically held that a district court may approve the dismissal of a case without first deciding a difficult question of subject-matter jurisdiction." *Crawford*, 267 F.3d at 764 (citing *Puerto Rico Mar. Shipping Auth. v. Leith*, 668 F.2d 46, 50 n.9 (1st Cir. 1981)). The court explained, however, that "[t]his case differs from *Leith* in that it is a purported class action. Because it involves a putative class, its dismissal under either provision of Rule 41 is subject to court approval pursuant to Rule 23(e)." *Id.* at 764, 767. The court went on to describe the "complicated process" that court approval under Rule 23(e) can involve including, in the case before it, "substantial and unavoidable questions of law and fact." *Id.* at 764-65. The court found that "[w]hen compared with these complications under Rule 23(e), the issues of subject-matter jurisdiction raised in this case are not particularly time consuming or difficult to resolve" and proceeded "[i]n the interest of judicial economy [to] rule in the first instance on the jurisdictional issues which the district court did not resolve." *Id.* at 765. The court ultimately held that the federal courts lacked subject matter jurisdiction because the amount in controversy did not exceed $75,000 as required to establish diversity jurisdiction, but declined to "hold that the district court erred in dismissing the case without a finding of subject-matter jurisdiction" because "[t]hese issues of diversity jurisdiction were not so clear-cut at the time the district court entered its order of dismissal." *Id.* at 767. The import of *Crawford* on the case presently before the Court is not entirely clear. It is possible to read *Crawford* as endorsing, albeit in dicta, the First Circuit's approach of allowing a district court to grant a motion for voluntary dismissal under Rule 41 without first assessing its subject matter jurisdiction, at least in cases where deciding the Rule 41 question does not involve complicated questions of law or fact. But *Crawford* also suggests that where jurisdictional questions are not particularly difficult in comparison to Rule 41 questions they should be addressed first by the court. *See Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1215 (8th Cir. 2011) (finding that "[t]he district court erred in failing to take up" a subject matter jurisdiction issue prior to ruling on a motion for voluntary dismissal and explaining that "[a]fter the trial court determines whether it has subject matter jurisdiction, it can consider whether dismissal without prejudice is appropriate, taking into consideration whether the motion to dismiss is a forum-shopping measure"); *see also Timbisha Shoshone Tribe v. Kennedy*, Civ. No. 09-1248, 2010 WL 582054, at *3 (E.D. Ca. Feb. 18, 2010) (interpreting *Crawford* as holding

(Footnote continued on next page.)

A.      **Subject Matter Jurisdiction**

1.      **Standard of Review**

RJ Ryan brings its motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(c) which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The defense of lack of subject matter jurisdiction may be raised at any time.  *See* Fed. R. Civ. P. 12(h)(3) ("If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  Where, as here, a party brings a Rule 12(c) motion challenging subject matter jurisdiction, the Court considers the motion under the same standard that governs motions to dismiss for lack of subject matter jurisdiction filed prior to a responsive pleading under Rule 12(b)(1).  *See Brown v. Grand Island Mall Holdings, Ltd.*, Civ. No. 09-3086, 2010 WL 489531, at *1 (D. Neb. Feb. 8, 2010) (explaining that motions challenging subject matter jurisdiction brought after an answer is filed should technically be brought under Rules 12(h)(3) and 12(c) but "[t]his is purely a formal distinction . . . because the same standards are applied as under Rules 12(b)(1) and 12(b)(6)").

"A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide

_____
(Footnote continued.)

that, even in non-class actions, dismissal under Rule 41(a)(2) "is inappropriate when subject matter jurisdiction is lacking").  In an abundance of caution and in the absence of clear authority from the Eighth Circuit that the Court may consider Rule 41 motions prior to establishing subject matter jurisdiction, the Court will first consider the subject matter jurisdiction question before considering ECS' motion for voluntary dismissal.

the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013).   In deciding a motion under Rule 12(b)(1) the Court must first "distinguish between a 'facial attack' and a 'factual attack.'"   *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).   In other words, in a facial challenge the court "determine[s] whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint, and drawing all reasonable inferences in favor of the plaintiff." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2003) (citations omitted).   In a factual attack the court "inquires into and resolves factual disputes," *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002), and is free to "consider[] matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6.   The nonmoving party in a factual challenge "does not have the benefit of 12(b)(6) safeguards." *Id.*

RJ Ryan characterizes its motion as a facial challenge to subject matter jurisdiction, explaining that "ECS' Third-Party Complaint can be dismissed purely upon review of the pleadings, the exhibits attached thereto and the materials naturally embraced by the pleadings."   (Mem. in Supp. of Mot. for J. on the Pleadings at 9.) Accordingly, in considering subject matter jurisdiction the Court assumes, as true, the allegations in ECS' third-party complaint and draws all inferences in ECS' favor.

## 2.    Supplemental Jurisdiction

The original complaint brought by Plaintiffs against ECS in this matter clearly contained a basis for the Court's subject matter jurisdiction, as it raised federal question claims under ERISA.  *See* 28 U.S.C. § 1331.  But the parties appear to agree that ECS' third-party complaint does not provide a basis for original federal jurisdiction, as it does not contain a federal question for purposes of § 1331 jurisdiction, nor does it plead diverse citizenship or an amount in controversy in excess of $75,000 for purposes of establishing diversity jurisdiction under 28 U.S.C. § 1332.  Accordingly, if there is subject matter jurisdiction over the third-party complaint it would stem from the Court's supplemental jurisdiction under 28 U.S.C. § 1367 which provides, in relevant part, that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  "Claims within the action are part of the same case or controversy if they 'derive from a common nucleus of operative fact.'"  *Myers v. Richland Cnty.*, 429 F.3d 740, 746 (8th Cir. 2005) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial proceeding.'"  *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (quoting *Gibbs*, 383 U.S. at 725).  "A loose factual connection between the claims is generally sufficient."  *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995) (internal quotation marks omitted).

RJ Ryan argues that the Court cannot exercise supplemental jurisdiction over the third-party complaint because the original complaint between Plaintiffs and ECS and the third-party complaint do not arise out of a common nucleus of operative facts. Specifically RJ Ryan argues that the original complaint arises out of ECS' alleged breach of a collective bargaining agreement, while the third-party complaint arises out of RJ Ryan's alleged breach of a subcontract agreement with ECS, explaining:

> ECS' claim, in essence, requires a determination of whether the subcontract obligates RJRyan to tender specific payments and whether it can have any liability for the alleged failure to tender payment and/or to timely tender payment of expenses. Thus, the terms of the subcontract and any liability of RJRyan arising therefrom are materially different from the terms of the [collective bargaining agreement] and any liability of ECS arising therefrom.

(Mem. in Supp. of Mot. for J. on the Pleadings at 13.)

The Court concludes, however, that the claims asserted by ECS in the third-party complaint are sufficiently related to the claims brought against ECS by Plaintiffs to allow the Court to exercise supplemental jurisdiction. The original complaint alleged that ECS failed to timely submit fringe contributions due and owing for the months of February and March 2013 based on its employment of IBEW 292 workers. (Compl. ¶¶ 7, 14.) In the third-party complaint ECS alleges that Plaintiffs sued it to recover those funds because, although ECS submitted draw requests for the payment of fringe benefits for all workers on the SanMar project including members of IBEW 292, RJ Ryan failed to pay ECS or members of IBEW 292 for any wages, taxes or fringe benefits beginning in January 2013. (Third-Party Compl. ¶¶ 37-38, 40-44.) Although the obligations between RJ Ryan and ECS may have been governed by a different source than the relationship

between Plaintiffs and ECS, the claims both relate to the payment of fringe benefits for IBEW 292 workers, and therefore derive from a common nucleus of operative facts.[4] Accordingly, the Court concludes that it may exercise its supplemental jurisdiction, and therefore has subject matter jurisdiction over the third-party complaint. *See Underpinning & Found. Skanska, Inc. v. Berkley Reg'l Ins. Co.*, 262 F.R.D. 196, 198 (E.D.N.Y. 2009) (exercising supplemental jurisdiction where defendant brought a third-party complaint against another entity "seeking indemnification from [that entity] for any amounts [plaintiff] should recover from [defendant]"); *U.S. Fid. & Guar. Co. v. Shorenstein Realty Servs., LP*, 564 F. Supp. 2d 839, 841 (N.D. Ill. 2008) (concluding that although a third party "was not a party to the insurance contract issued by the underlying plaintiff, its duties to [the defendant] in relation to the underlying suits provide more than a loose factual connection between the claims" (internal quotation marks omitted)).[5]

---

[4] In this respect, the Court finds RJ Ryan's tangential references to money it has paid ECS under the subcontract to be irrelevant to its determination of supplemental jurisdiction, as these references do not demonstrate the futility of ECS' claims. Specifically, RJ Ryan alleges that it has paid ECS more than the value of its subcontract with ECS. But ECS' third-party complaint is not based upon the subcontract, instead it is based on RJ Ryan's failure to process draw requests submitted by ECS with respect to funds held in trust by RJ Ryan. Accordingly, whether RJ Ryan paid ECS more than the value of the subcontract does not impact ECS' third-party claims. Furthermore, even if ECS' claims under the third-party complaint would ultimately fail based on a finding that RJ Ryan had, in fact, satisfied its duties of payment and dispersal of funds in response to the draw requests, that is a merits determination, and would not demonstrate that the Court lacked subject matter jurisdiction over the complaint in the first instance.

[5] After it filed its motion to dismiss, RJ Ryan filed supplemental materials regarding the basis of ECS' third-party complaint. Specifically, RJ Ryan submitted to the Court some of ECS' discovery responses provided in the state court action, which it argues support its contention that the third-party complaint was baseless. RJ Ryan contends that these materials show that RJ Ryan finished its work on the SanMar project by March 15, 2013, and "[t]hus, ECS had **no basis** to allege that ECS was liable for any contributions after March 15, 2013 and continuing."

(Footnote continued on next page.)

## B.      Voluntary Dismissal

Having established that the Court could exercise jurisdiction in this case, the Court will go on to consider ECS' motion for voluntary dismissal of its third-party complaint. ECS requests dismissal with prejudice, arguing that dismissal of the third-party complaint is appropriate because ECS "now ha[s] reached a settlement in the Primary Case, and the case has been dismissed."  (Mot. to Dismiss at 2.)

If all parties do not stipulate to the dismissal of an action, after a responsive pleading has been filed,

_____

(Footnote continued.)

(Supplement to Reply at 2, Feb. 7, 2014, Docket No. 64 (emphasis in original).)  As a necessary precursor to its argument, RJ Ryan interprets the third-party complaint as averring "that RJRyan was liable for the payment of **all** fringe benefit contributions claimed by Plaintiffs to be owed by ECS" and contends that because of the date RJ Ryan's work at the SanMar project concluded ECS' demand for indemnity "for on-going fringe benefit contributions owed to Plaintiffs" was made in bad faith.  (*Id.* at 3-4 (emphasis in original).)   Although RJ Ryan describes these materials as relating primarily to its request for attorneys' fees, it also indicates that the materials weigh in favor of granting its motion for judgment on the pleadings.  Accordingly, the Court has considered the import of these materials on its subject matter jurisdiction, and concludes that they do not alter its conclusion that supplemental jurisdiction over the third-party complaint exists.  The original complaint in this case seeks payment for fringe benefits due and owing from February and March 2013 and for contributions that become due and owing "during the pendency of this lawsuit."  (Compl. ¶¶ 16-18.)  The third-party complaint alleges that RJ Ryan refused to pay draw requests beginning in January 2013 and that ECS has suffered damages for the failure to release those funds because it was sued by Plaintiffs.  (Third-Party Compl. ¶¶ 39-40.)  Therefore, the third-party complaint adequately alleges a breach of RJ Ryan's obligation to pay during a time period that could have affected ECS' ability to make the fringe benefit contributions that were the subject of the original complaint.  In other words, if the allegations in the third-amended complaint are true, and RJ Ryan stopped paying draw requests in January 2013, this could have affected ECS' ability to make the February and March 2013 contributions to the Plaintiffs' funds.  Accordingly, the information that RJ Ryan no longer worked at the SanMar project as of March 15, 2013, does not, as RJ Ryan seems to suggest, make ECS' claim for indemnity and contribution impossible, or alter the Court's conclusion that the indemnity sought from RJ Ryan relates to ECS' obligation to pay Plaintiffs, and therefore falls within the Court's subject matter jurisdiction.

> an action may be dismissed at the plaintiff's request only by court order, on
> terms that the court considers proper.  If a defendant has pleaded a
> counterclaim before being served with the plaintiff's motion to dismiss, the
> action may be dismissed over the defendant's objection only if the
> counterclaim can remain pending for independent adjudication.  Unless the
> order states otherwise, a dismissal under this paragraph . . . is without
> prejudice.

Fed. R. Civ. P. 41(a)(2); *see also id.* 41(c) (noting that Rule 41 applies to third-party

claims).  "[A] dismissal pursuant to Rule 41(a)(2) is not one of right but is rather a matter

for the discretion of the trial court."  *Great Rivers Coop. of Se. Iowa v. Farmland Indus.,*

*Inc.*, 198 F.3d 685, 689 (8th Cir. 1999) (internal quotation marks omitted).

> In exercising that discretion, a court should consider factors such as
> whether the party has presented a proper explanation for its desire to
> dismiss; whether a dismissal would result in a waste of judicial time and
> effort; and whether a dismissal will prejudice the defendants.  Likewise, a
> party is not permitted to dismiss merely to escape an adverse decision nor
> to seek a more favorable forum.

*Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213-14 (8th Cir. 2011) (quoting

*Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999)).  "The

purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly

affect the other side."  *Paulucci v. City of Duluth*, 826 F.2d 780, 782 (8th Cir. 1987).

RJ Ryan argues that voluntary dismissal is inappropriate because RJ Ryan has

incurred substantial attorneys' fees due to ECS' refusal to dismiss its third-party

complaint earlier.  Specifically, RJ Ryan explains:

> Because ECS refused to dismiss its Third-Party Complaint, RJRyan was
> compelled to remain in this lawsuit and file its dispositive motion.  Only
> now, after RJRyan's Motion for Judgment on the Pleadings has been fully
> briefed and ECS has settled with Plaintiffs, is ECS disinterested in pursuing
> the third-party claims against RJRyan.  ECS' motion to dismiss is
> substantially late and the delay has had one effect – the substantial increase
> in RJRyan's costs and legal fees.  Thus, RJRyan is agreeable to the

dismissal of this action **along with** the resolution of RJRyan's outstanding claim for attorneys' fees and costs or, alternatively, specifically allowing RJRyan's request for legal fees to be resolved in Minnesota State Court.

(RJ Ryan's Mem. in Opp'n to Mot. to Dismiss at 2-3 (emphasis in original) (citation omitted).)

The Court concludes, however, that the delay of less than three months between the filing of the third-party complaint and ECS' motion for voluntary dismissal is not, in the context of typical litigation, a particularly lengthy or egregious delay, and therefore does not counsel against voluntary dismissal. *See Thatcher*, 659 F.3d at 1214 (finding that the timing of a voluntary motion to dismiss weighed in favor of dismissal where "[t]he motion to dismiss came at the outset of the action" where the case had not progressed past the pleading stage "so little judicial time and effort had been expended"). The Court also finds that the other relevant factors weigh in favor of granting voluntary dismissal here.  First, ECS has presented a proper explanation for its desire to dismiss. To wit, ECS has now settled the claims brought against it by Plaintiffs in the main case, and no longer desires to pursue its claims against RJ Ryan, at least in this forum.  Second, the Court finds that significant judicial time and effort has not yet been expended on this case, as the case is still at the pleading stage. *See id.*  Finally, the Court concludes that RJ Ryan will not suffer prejudice as a result of voluntary dismissal because it has not expended substantial resources litigating the case – having engaged in no hearings or discovery – and because, as explained below, no merits determination is pending before the Court.  Because RJ Ryan wishes to litigate against ECS in state court, it has demonstrated no prejudice from dismissal in this forum. *See Oxford v. Williams Cos.*,

154 F. Supp. 2d 942, 951-52 (E.D. Tex. 2001) (explaining that voluntary dismissal is generally appropriate unless "dismissal would preclude the court from deciding a pending case or claim-dispositive motion, or . . . there is an objectively reasonable basis for requesting that the merits of the action be resolved in the current forum to avoid legal prejudice" and examining, among other factors "whether the suit is still in the pretrial stages," "whether the parties have [f]iled numerous pleadings and memoranda, have attended conferences, and whether prior court determinations were adverse to the plaintiff," and "whether hearings have been held, whether any defendants have been dismissed on summary judgment, and whether the parties have undertaken significant discovery").

RJ Ryan appears to insinuate that ECS was motivated to voluntarily dismiss by the improper purpose of escaping an adverse decision.  But the Court finds no attempt to escape an adverse decision in ECS' motion.  First, contrary to RJ Ryan's contention, ECS' motion for voluntary dismissal does not "concede[ that jurisdiction] does not exist." (RJ Ryan's Mem. in Opp'n to Mot. to Dismiss at 3; *see also* Reply at 2, Dec. 12, 2013, Docket No. 61 ("ECS now acknowledges that no jurisdiction exists over its duplicative Third-Party Complaint.").)  Second, in its motion for judgment on the pleadings RJ Ryan did not seek an adverse decision on the merits of ECS' claims.[6]  Instead, RJ Ryan sought

---

[6] In its motion for judgment on the pleadings, RJ Ryan mentioned in its introduction that "[e]ven assuming all of the allegations of the Third-Party Complaint as true, ECS cannot blame others (including RJRyan) for its non-payment of fringe benefits to Plaintiffs, particularly when RJRyan has already paid more than the value of the RJRyan/ECS subcontract to ECS or ECS' subcontractors and suppliers after ECS absconded with more than $400,000 of contract funds." (Mem. in Supp. of Mot. for J. on the Pleadings at 2.)  But RJ Ryan did not include any

(Footnote continued on next page.)

to dismiss the claims on the basis of lack of subject matter jurisdiction or a number of discretionary doctrines under which the Court could decline to exercise jurisdiction. RJ Ryan's motion therefore sought essentially the same relief that would result from a voluntary dismissal – dismissal of the case to allow the parties' claims to proceed in Minnesota state court.

RJ Ryan's overarching argument – that a motion for voluntary dismissal is improper where a defendant has expended the energy and resources to file a motion to dismiss based on lack of subject matter jurisdiction would overly restrict the scope of the Court's discretion under Rule 41(a)(2). A plaintiff is allowed to voluntarily dismiss a suit without court approval unless the defendant has filed an answer or a motion for summary judgment. *See* Fed. R. Civ. P. 41(a)(1)(A)(i) (noting that "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment"). Therefore, the Federal Rules specifically contemplate that voluntary dismissal – even without court approval – is allowed (and indeed required) where the defendant has moved to dismiss the complaint without answering. In other words, many voluntary dismissals under Rule 41(a)(1), and necessarily all of the voluntary dismissals under Rule 41(a)(2), contemplate that the defendant will have expended some energy and resources in the case prior to voluntary

_____

(Footnote continued.)

substantive argument of how the third-party complaint, on its face, failed to state a claim. Nor has RJ Ryan presented evidence demonstrating that it could not be liable for failure to approve the draw requests submitted by ECS, as described in the third-party complaint. Accordingly, the Court concludes that no merits determination was presented by RJ Ryan in its motion for judgment on the pleadings.

dismissal.  Accordingly, RJ Ryan's argument that it had to engage in some pleadings motion practice prior to ECS' motion for voluntary dismissal does not prevent the Court from granting voluntary dismissal, nor does it outweigh the factors which counsel in favor of voluntary dismissal here.

Finally, the Court must consider whether the voluntary dismissal should be with or without prejudice, and notes that in this respect it is not bound by the parties' requests. *Fougner v. I-Flow Corp.*, Civ. No. 08-5157, 2010 WL 2557761, at *3 (D. Minn. June 23, 2010) (granting a motion for voluntary dismissal but doing so without prejudice, even though the moving party requested dismissal with prejudice).  The Court concludes that dismissal without prejudice here is most appropriate, to avoid any unintended preclusive consequences of this dismissal on the pending state court claims.  Furthermore, the Court notes that although RJ Ryan repeatedly requested dismissal with prejudice, that request was incompatible with its theory of dismissal – for lack of subject matter jurisdiction. *See Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004) ("A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent."); *Mo. Soybean Ass'n v. U.S. EPA*, 289 F.3d 509, 513 (8th Cir. 2002) ("Dismissal for lack of jurisdiction is not an adjudication of the merits, thus the case must be dismissed without prejudice.").  Accordingly, the Court will grant ECS' motion for voluntary dismissal, but will dismiss the third-party complaint without prejudice to avoid any unanticipated collateral consequences of the judgment.

## II.    ATTORNEYS' FEES

Finally, the Court will consider RJ Ryan's request for attorneys' fees.  RJ Ryan generally argues that attorneys' fees should be awarded because ECS subjected RJ Ryan to duplicative litigation, explaining:

> After stealing hundreds of thousands of dollars from RJRyan on the San Mar Project, after failing to pay its sub-subcontractors and suppliers more than $2[] million, and after causing mechanic's liens to be filed by its sub-subcontractors and suppliers against the SanMar Project, all to the financial detriment of RJRyan, ECS has elected to improperly pursue duplicative litigation in multiple forums.

(Reply at 6.)

RJ Ryan cites a variety of statutory and doctrinal bases for the Court's authority to award attorneys' fees in this instance.  The Court will consider each of these doctrines in turn.  First, RJ Ryan argues that the Court should award fees under 28 U.S.C. § 1927.  Title 28 U.S.C. § 1927 allows for the award of attorney fees, providing that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Sanctions under § 1927 are only proper "when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."  *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 445 (8th Cir. 2001) (internal quotation marks omitted).  "[A]n attorney cannot be sanctioned under § 1927 for simply commencing a frivolous lawsuit."  *Gurman v. Metro Hous. & Redevelopment Auth.*, 884 F. Supp. 2d 895, 900 (D. Minn. 2012).

The heart of RJ Ryan's claim for attorneys' fees under § 1927 is that ECS filed a lawsuit that lacked jurisdiction, and then caused "increased expenses to be incurred by RJRyan" when ECS refused to dismiss its third-party complaint following the Rule 16(f) conference. (Reply at 6.)  As an initial matter, commencing a lawsuit without jurisdiction cannot support a fee award under § 1927, as the provision is concerned with vexatiously multiplying the proceedings, not initiating the proceedings in the first instance.  *See Gurman*, 884 F. Supp. 2d at 900.  Furthermore, as explained above, the Court has already concluded that it has supplemental jurisdiction over the third-party complaint, and therefore sanctions based on filing a complaint without jurisdiction are not applicable here.  Finally, the Court concludes that ECS' conduct, as described by RJ Ryan, resulted in the filing of a single motion by RJ Ryan – hardly the type of vexatious multiplication of proceedings that § 1927 was designed to address.  *See, e.g.*, *Lee*, 236 F.3d at 445 (affirming sanctions under § 1927 where "[t]he court expressly found that baseless class action claims dominated discovery and motion practice for an extended period before Lyons abandoned the class allegations without explanation").  In fact, RJ Ryan, by refusing to stipulate to dismissal after the main case settled and failing to resolve the counterclaims that it asserted against ECS in this action bears at least part of the blame for the costs it incurred in litigating this action.  Accordingly, the Court concludes that sanctions under § 1927 are not warranted.

RJ Ryan also seeks fees as part of the Court's "inherent power to award attorneys' fees as a sanction." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 751 (8th Cir. 2004). Federal courts "may assess attorney's fees when a party has acted in bad faith,

vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted).   The Eighth Circuit has held that "[a] bad faith finding is specifically required in order to assess attorneys' fees." *Stevenson*, 354 F.3d at 751 (citing *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266 (8th Cir. 1993)).   "This bad faith conduct must have practiced a fraud upon the court or defiled the temple of justice, and cannot be based solely on the prelitigation conduct that led to the substantive claim of the case."   *Id.* (citations and internal quotation marks omitted).   "A court's inherent power to award attorney fees pursuant to the bad faith exception 'depends not on which party wins the lawsuit, but on how the parties conduct themselves **during the litigation**.'"   *Lamb Eng'g & Constr. Co. v. Nev. Pub. Power Dist.*, 103 F.3d 1422, 1435 (8th Cir 1997) (emphasis in original) (quoting *Chambers*, 501 U.S. at 53).

Here the Court concludes that RJ Ryan has failed to demonstrate bad faith during the litigation.   As explained above, ECS acted reasonably and within its rights by bringing a third-party complaint against RJ Ryan.   Contrary to RJ Ryan's suggestion, simply proceeding with a complaint and forcing the opposing side to bring a motion to dismiss does not constitute bad faith, but instead falls within the scope of typical litigation practice.   Finally, RJ Ryan's request for attorneys' fees focuses primarily on alleged conduct that it claims occurred prior to the litigation – such as ECS "stealing hundreds of thousands of dollars."   (*See* Reply at 6.)   This conduct, although possibly the basis for a lawsuit, does not demonstrate bad faith during the course of the litigation and therefore does not support an award of sanctions.

RJ Ryan also cites Rule 11 in passing as a basis for recovery of attorneys' fees contending that ECS misrepresented that its third-party complaint "[w]as not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that "[t]he claims and legal contentions regarding jurisdiction were warranted by existing law." (Reply at 7 (citing Fed. R. Civ. P. 11(b).) RJ Ryan notes that although it did not provide notice of its intent to seek sanctions under Rule 11 the Court should excuse that failure because "the November 1, 2013, Rule 16(f) conference and subsequent Order (ECF 41), provided ample notice to ECS of the potential for monetary sanctions. The Court gave ECS one week to decide whether to continue with the Third-Party Complaint, and ECS decided to rush headfirst into this motion and RJRyan's fee request." (Reply at 7 n.3.) But the Court will decline to consider ECS' request under Rule 11 because it has not followed the proper procedure for bringing such a motion. Rule 11 provides that:

> A motion for sanctions **must be made separately from any other motion** and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, **but it must not be filed or be presented to the court if the challenged** paper, **claim**, defense, contention, or denial **is withdrawn or appropriately corrected within 21 days after service** or within another time the court sets.

Fed. R. Civ. P. 11(c)(2) (emphases added).

But RJ Ryan did not bring a separate motion for sanctions, nor did RJ Ryan serve ECS with the motion prior to filing it with the Court. Additionally, to the extent RJ Ryan's motion for judgment on the pleadings could be construed as a motion for Rule 11 sanctions, the Court would conclude that ECS properly withdrew, to the extent it was able, the challenged claim by filing a motion for voluntary dismissal of its third-party

complaint within twenty-one days of RJ Ryan's motion.  Finally, as explained above, even if RJ Ryan's request for Rule 11 sanctions was procedurally proper, it would fail on the merits because the Court has concluded that ECS did not make false representations about the jurisdictional basis for the third-party complaint nor did it act in bad faith in filing the third-party complaint.

Finally, RJ Ryan seeks recovery of attorneys' fees and costs under Minnesota law. *See Stevenson*, 354 F.3d at 751 (noting that in diversity cases awards of attorneys' fees are "generally governed by the applicable substantive state law").  As support, RJ Ryan cites cases in which the Minnesota Supreme Court has held that an award of attorneys' fees is appropriate "in situations in which the defendant's wrongful act thrusts the plaintiff into litigation with a third person." *Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26, 33 (Minn. 1982); *see also Dworsky v. Vermes Credit Jewelry, Inc.*, 69 N.W.2d 118, 124 (Minn. 1955).  RJ Ryan argues that an award of attorneys' fees is appropriate under this standard because "ECS' wrongful acts include arguing that this Court has jurisdiction over its duplicative claims already asserted in Minnesota state court and then ECS refused to dismiss its Third-Party Complaint and forced RJRyan to incur significant legal fees." (Reply at 8.)

The Court finds RJ Ryan's reliance on Minnesota's rule allowing recovery where wrongful conduct thrusts a plaintiff into litigation with a third party misplaced because the relevant conduct before the Court is ECS' filing of a third-party complaint and refusal to withdraw that complaint in response to RJ Ryan's demands.  This conduct, however, did not thrust RJ Ryan into litigation of any kind with a third party.  Instead, the third-

party complaint asserts a claim by ECS against RJ Ryan, placing ECS and RJ Ryan into the typical plaintiff-defendant relationship that characterizes most litigation.  To adopt RJ Ryan's interpretation of the Minnesota rule would allow for the recovery of attorneys' fees anytime a plaintiff chooses to pursue litigation against a defendant, and the defendant believes that the plaintiff will ultimately lose.  Such expansion would largely eviscerate the general rule that "attorneys fees are not recoverable in litigation absent a specific contract or statutory authorization."   *Langeland*, 319 N.W.2d at 33. Furthermore, even if the "thrust into litigation" exception cited by RJ Ryan otherwise applied to the present situation, imposing sanctions under this exception requires a merits determination.  In order for the Court to conclude whether RJ Ryan's presence in the litigation was the result of ECS' wrongful acts, the Court would need to know – based on more than assertions in RJ Ryan's brief – whether ECS had in fact acted wrongfully. Because RJ Ryan has not requested or obtained a merits determination and because the thrust into litigation exception is inapplicable where, as here, the litigation complained of does not involve a third-party, the Court will deny RJ Ryan's request for attorneys' fees under Minnesota law.

## III.    RJ RYAN'S COUNTERCLAIMS

As a final matter, the Court notes that neither party has clearly articulated whether RJ Ryan's counterclaims are to be disposed of in this Order, and if so, on what basis the Court would or could dismiss those claims.  RJ Ryan makes occasional references that could be interpreted as suggesting it seeks voluntary dismissal of its counterclaims.  (*See, e.g.*, Mem. in Opp'n to Mot. to Dismiss at 2 ("Accordingly, the Court should deny ECS'

request for relief and fashion a remedy that disposes of **all of the outstanding issues in the third-party action**." (emphasis added).)  But the Court is reluctant to dismiss claims based on such vague statements that were potentially made in the context of an argument that the Court lacked subject matter jurisdiction over the third-party complaint. Accordingly, absent direction from the parties, the Court will decline to dismiss RJ Ryan's counterclaims at this time.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Third-Party Defendant's Motion for Judgment on the Pleadings [Docket No. 44] is **DENIED**.

2.     Third-Party Plaintiff's Motion to Dismiss [Docket No. 57] is **GRANTED** to the extent it seeks voluntary dismissal.

3.     The claims in the Third-Party Complaint against RJ Ryan [Docket No. 22] are **DISMISSED without prejudice.**

DATED:   September 16, 2014          ___s/ John R. Tunheim___
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                   United States District Judge